UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CHARLES GREASON,**

      **Plaintiff,**           **CIVIL ACTION NO. 13-cv-14542**

      **v.**                          **DISTRICT JUDGE AVERN COHN**

**COMMISSIONER OF**      **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Charles Greason seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 9) and Defendant's Motion for Summary Judgment (docket no. 12). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) The undersigned has reviewed the pleadings, dispenses with a hearing, and issues this Report and Recommendation pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

### I.    RECOMMENDATION

The undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 12) be GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with a protective filing date of February 24, 2011, alleging disability beginning September 1, 2008, due to kidney problems, high blood pressure, leg pain, headaches, depression, left arm numbness, ulcers on arms, arthritis, memory loss, and a stroke. (*See* TR 29, 261.) The Social Security Administration denied Plaintiff's claims on June 23, 2011, and Plaintiff requested a *de novo* hearing, which was held on May 8, 2012, before Administrative Law Judge (ALJ) Kevin W. Fallis, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 29-41.) The Appeals Council declined to review the ALJ's decision (TR 1-3), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently pending before the Court.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND THE VOCATIONAL EXPERT'S TESTIMONY

### A. Plaintiff's Testimony and the Medical Evidence of Record

In his Statement of Facts, Plaintiff sets forth a short procedural history of this matter and the ALJ's basis for denying his benefits, but he does not discuss his testimony or medical record. (Docket no. 9 at 5.) After setting forth the relevant law in this matter, Plaintiff restates the ALJ's findings and makes some references to his testimony and medical record. (Docket no. 9 at 10-12.) Defendant's account of Plaintiff's medical record is largely consistent with the ALJ's, but is more sharply focused on the evidence in support of Defendant's position. (Docket no. 12 at 5-10.) The undersigned has conducted an independent review of the hearing transcript and Plaintiff's medical record, but for the reasons discussed *infra*, it is unnecessary to summarize them herein. Therefore,

Plaintiff's medical record and testimony as set forth in the ALJ's decision (TR 32-36) and Plaintiff's brief (Docket no. 9 at 10-12) are adopted; the undersigned will incorporate comments and citations as necessary throughout this Report and Recommendation.

### B. Vocational Expert's Testimony

The ALJ asked the Vocational Expert (VE) whether a hypothetical person of the same age, education, and work experience as Plaintiff, who "would be able to perform light work, which is lift up to 20 pounds occasionally, lift, carry up to 10 pounds frequently;" " would be able to stand, walk for about six hours and sit for up to six hours in an eight-hour day with normal breaks;" "could perform occasional pushing or pulling;" "could perform frequent foot control operation;" "could never climb ladders, ropes, or scaffolds;" "could occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch, and crawl;" "would be limited to occasional overhead reaching;" "could perform frequent handling of objects and frequent fingering bilaterally;" "would have to avoid even moderate exposure to excessive vibration;" "would have to avoid all use of hazardous, moving machinery, and all exposure to unprotected heights;" "would be limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine work place changes;" and can only have "occasional and superficial interaction with the public and coworkers" would be able to perform Plaintiff's past relevant work. (TR 81.) The VE testified that such an individual could not perform any of Plaintiff's past relevant work but could perform work in the light, unskilled category, including that of an inspector, visual inspector, or assembler, for which there were 8,000, 2,000, and 4,000 jobs in the regional economy, respectively. (TR 81-82.)

The ALJ then asked the VE to consider whether there would be any work for a second

hypothetical person, assuming all of the conditions of the first hypothetical, and who would be off task twenty percent of the day in addition to regularly scheduled breaks. (TR 82.) The VE responded that there would be no jobs for such a person, no matter the reason for being off task. (TR 82.) Lastly, the ALJ asked the VE whether there would be any work for a third hypothetical person who, assuming all of the traits of the first two hypothetical persons, would be absent from work for two work days per month due to the person's doctor visits, symptoms, and side effects of medications. (TR 82-83.) The VE again responded in the negative. (TR 83.)

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2013, and that he had not engaged in substantial gainful activity since the alleged onset date of September 1, 2008. (TR 31.) The ALJ then found that Plaintiff suffered from the following severe impairments: "hypertension, osteoarthritis, stage III kidney disease, bipolar disorder, obesity, chronic pain, and uroliathiasis." (TR 31-36.) The ALJ also found, however, that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 36-38.) The ALJ then determined that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional pushing or pulling; and frequent operation of foot controls. Never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; occasional balancing, stooping, kneeling, crouching and crawling. Occasional overhead reaching; frequent bilateral handling objects and fingering. Avoid even moderate exposure to excessive vibration; all use of hazardous moving machinery and exposure to unprotected heights. Work is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions
>
> and routine work place changes. Only occasional, superficial interaction with the public and coworkers.

(TR 38-39.) Subsequently, in reliance on the VE's testimony, the ALJ found that Plaintiff could not perform any of his past relevant work but that he could perform a significant number of jobs in the national economy. (TR 39-41.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from September 1, 2008, through the date of the ALJ's decision. (TR 41.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir.

1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.      Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.      Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded under sentence four because "[t]he Commissioner erred as a matter of law in assessing [Plaintiff's] credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [Plaintiff's] impairments." (Docket no. 9 at 6.)

### 1. *Plaintiff's Hypothetical Question Argument*

Plaintiff argues that the ALJ erred in the formulation of the hypothetical questions presented to the VE because they did not address Plaintiff's urination problem or "adequately indicate the severe limitations mentally that this individual has."[1] (Docket no. 9 at 12.) But the ALJ is only

---

[1] In the same paragraph, in the sentences preceding Plaintiff's stated challenge to the hypothetical, there are two additional challenges to hypothetical questions in relation to a "Tracy Washington" and a "Ms. Williams" instead of Plaintiff. (Docket no. 9 at 12.) Also, Plaintiff's Request for Relief references a "Gregory Williams." (*Id.* at 16.) Notably, Plaintiff's counsel filed nearly identical briefs with the Court in matters related to Tracy Washington and Gregory Williams on January 23, 2014 and February 9, 2014 respectively. *See Washington v. Comm'r of*

required to incorporate in his hypothetical questions those limitations that he finds credible and supported by the record.[2] *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ's hypothetical questions presented all of the limitations included in Plaintiff's RFC–that is, all of the limitations that the ALJ found credible. The VE testified that there are jobs available for a person with these limitations. Thus, the ALJ's hypothetical questions were not improper, and in substance, Plaintiff's motion asserts that the ALJ erred in determining Plaintiff's RFC when he failed to properly assess Plaintiff's credibility and evaluate the medical opinions.

Plaintiff's argument also fails as his entire discussion of this matter is limited to several pages of legal standards and a few vague references to his testimony and medical records. (*See* docket no. 9.) As the Court addressed in a similar matter wherein Plaintiff's counsel filed a substantially similar brief on this issue, any additional analysis "is an exercise left to the reader; . . . Plaintiff's summary judgment brief lack[s] any survey, much less meaningful discussion, of the medical record, and Plaintiff likewise fail[s] to provide any factual basis for his challenge to the ALJ's [decision]." *Fielder v. Comm'r of Soc. Sec.*, No. 13-10325, 2014 WL 1207865, *1 (E.D. Mich. Mar. 24, 2014) (Rosen, J.). Thus, Plaintiff's Motion should be denied with regard to this issue.

---

*Soc. Sec.*, No. 13-14083, Dkt. No. 9 (E.D. Mich. Jan. 23, 2014) *and Williams v. Comm'r of Soc. Sec.*, No. 13-13211, Dkt. No. 8 (E.D. Mich. Feb. 9, 2014). The undersigned will not address the arguments related to Ms. Washington and Ms. Williams in Plaintiff's brief and urges Plaintiff's counsel to pay close attention to detail while briefing to protect the confidentiality of his clients.

[2]Indeed, as discussed below, the ALJ addressed Plaintiff's alleged urinary issues and mental limitations in determining Plaintiff's lack of credibility.

### 2. Plaintiff's Credibility Argument

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d

1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff asserts that the ALJ erred when he found that Plaintiff was not credible because "[t]he medical record supports his testimony." (Docket no. 9 at 11.) To support this argument, Plaintiff follows with vague references to his medical record:

> In regards to his back pain on 1/6/2012 he visited HCHN for complains [sic] in his back. *HCHN Adult Progress Note, 1/6/2012.* (Tr. 509) Furthermore, musculoskeletal was circled to indicate abnormal. *Id.*
>
> In regards to his Hypertension at *HCHN Adult Progress Note, 8/30/2011* the doctors [sic] notes indicate that "HTN…uncontrolled." (Tr. 511)
>
> In regards to his frequent urination *North Pointe Clinic, 3/2/2011* indicates a result of abdomen two views indicated that there was a "right sided ureteral stent in place," as well as "one or two slightly distended small bowel loops in the upper abdomen which may be on the basis of ileus." He states that his frequent urination problem causes him to have to go once an hour.
>
> In regards to his mental state the *HCHN Adult Progress Note pg. 2, 7/6/2011* indicated under Medical Decision Making that he "is forgetful, depressed and had suicidal idealizations [sic] last month, no acute idealization [sic] now." (Tr. 517) Additionally, *Genesee Count CMH, 2/22/2012* indicated that he was "always depressed and stay depressed" and even chronicled one instance where he "took a knife to bed, thought someone came into [his] room because [he] had scratches on [his] back." (Tr. 524) He stated in that report that he is "always thinking about the prison" and he "always feels like [he's] with the wrong people." *Id.* His diagnosis was that of "Major depressive disorder, recur. Severe wo/psych [sic]…[and] cannabis dependence." (Tr. 527). His current GAF as of 9/2/2011 was 50. *Id.* It was also indicated that he "does have insomnia." *Id at 9/2/2011.* The history of his current illness included "depression, insomnia, helplessness, uselessness, hard, someone pounding on the door with no one thee [sic] most recently." (Tr. 528). At that visit they also described his "stream of mental activity" as "slowed, sad, and unhappy." (Tr. 531) Additionally, he has also reported in *id at 7/14/2011* that he "always felt like he had to watch is [sic] back" and "does not like to be around people." (Tr. 536) His symptoms at that visit were marked as sleeplessness, hopelessness, helpless, low self-esteem, tired, loss of appetite, mood swings, can't concentrate, act without thinking, aggressive, angry, anxious, feels worthless, can't remember, obsessive (constant) thoughts, pain, and shaking. *Genesee Count CMH pg. 3, 7/14/2011.* (Tr. 537) Under Functional Summary of concern was his social relationships, fiancés [sic], physical health, and housing. (Tr. 548)
>
> In regards to his Kidney, *HCHN Adult Progress Note, 3/1/2011* indicated that

> he complained of constipation and that he had had surgery kidney stone and gallstones. (Tr. 521) Additionally, *Genesee Count CMH pg. 3, 9/2/2011* under medical history it was stated that a "doctor told him his kidney is bad and may have to go on dialysis." (Tr. 528)

(*Id*. at 11-12.) Like Plaintiff's hypothetical question argument, *supra*, Plaintiff's credibility argument is devoid of factual detail and legal analysis. Even assuming, *arguendo,* that Plaintiff's medical records are consistent with his complaints, these consistencies are not sufficient to overturn the ALJ's credibility determination, as the evidence also supports the ALJ's findings. In addition to considering Plaintiff's medical records, the ALJ considered the factors set forth in 20 C.F.R. § 416.929(c)(3) and found that Plaintiff's disability allegations were not credible. In making this determination, the ALJ reasoned that:

- No physician has restricted Plaintiff from working, in light of his ailments;

- Plaintiff can independently perform his daily living activities, when he so desires;

- Plaintiff's limited energy and memory loss could be attributed to his marijuana use;

- While Plaintiff's hypertension is controlled by taking medication, Plaintiff has been noncompliant in taking it;

- With regard to Plaintiff's kidney and urinary issues, they appear to be managed with medication, and nothing in the record suggests that Plaintiff continues to be or needs to be treated for them on a regular basis;

- Plaintiff's physical examinations reveal normal joints, stance, posture, ambulation, and dexterity;

- Plaintiff is unwilling to go to physical therapy, a pain clinic, or otherwise follow treatment protocols; and

- With regard to Plaintiff's mental limitations, the record contains evidence that

Plaintiff has consciously attempted to portray limitations that he doesn't have. (TR 38-39.) There is substantial evidence in support of the ALJ's decision. And where the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella*, 708 F.2d at 1059, and even if substantial evidence also supports the opposite conclusion. *See Her,* 203 F.3d at 389-90.

### 3. Waiver and Sanctions

The undersigned has carefully examined Plaintiff's counsel's submission and finds it thoroughly deficient and devoid of proper factual substance and legal analysis. Plaintiff's counsel's superficial, cut-and-paste, template approach to fulfilling his professional duty to substantively brief the issues presented for this Court's most serious consideration and determination fails to comply with all accepted rules of civil pleading and practice in this District. The Court acknowledges that counsel may reduce costs and improve efficiency by using and inserting previously generated work product, such as any relevant applicable legal standards and specific rules. But Plaintiff's counsel's repeated failure to set forth factually specific, discernable, sound legal analyses in his briefing to this Court compels the waiver of any such arguments. *See Kennedy v. Comm'r of Soc. Sec.*, 87 Fed.Appx. 464, 466 (6th Cir. 2003) ("[I]ssues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.1996)). The "'court is under no obligation to scour the record for errors not identified by [the] claimant.'" *Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, *14 (E.D. Mich. Jan 25, 2013) (Grand, M.J.) (quoting *Martinez v. Comm'r of Soc. Sec*., No. 09-13700 (E.D. Mich. Mar. 2, 2011)). Therefore, Plaintiff's Motion should be denied.

As Chief Judge Rosen noted in *Fielder*, this is not the first time the Court has denied a motion filed by Plaintiff's counsel for "reliance on conclusory assertions and absence of developed

argument;" indeed, "nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel."    2014 WL 1207865, at *1 n.1 (collecting cases). Moreover, the Court warned Plaintiff's counsel that "this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case" and that failure to do so may result in either sanctions or referral for disciplinary proceedings. *Id.* Nevertheless, any consideration of an award of sanctions against Plaintiff's counsel in this case would be inappropriate as the instant Motion was filed prior to Chief Judge Rosen's decision in *Fielder*.

## VI.    CONCLUSION

For the reasons stated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 12) be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to

Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: October 30, 2014         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: October 30, 2014         s/ Lisa C. Bartlett
                                Case Manager